**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Bean, | No. 07-8063-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| McDougal Littell, a division of Houghton Mifflin Company, and R.R. Donnelley & Sons Company, | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction in Fact (Doc. # 37). Plaintiff has filed an Opposition to Defendants' Motion (Doc. # 40), and Defendants have filed a Reply (Doc. # 41). The Court has considered these motions, and will now rule on the matter.

**I. BACKGROUND**

Defendant McDougal Littel, a division of Houghton Mifflin Company ("McDougal"), is a textbook publisher. Defendant R.R. Donnelley and Sons Company ("R.R. Donnelley") is a printer of textbooks. Plaintiff Tom Bean ("Bean") is a professional photographer who created and owns a photograph entitled, "Ruins of Anasazi Granaries at Nankoweep above the Colorado River, Grand Canyon National Park" ("the photograph"). In 1998, Bean sold McDougal limited licenses to copy and print 45,000 total copies of the photograph for use

in three of McDougal's textbooks.

In 2007, Bean brought suit against McDougal and R.R. Donnelley for copyright infringement and against McDougal for fraud. Bean alleges that McDougal exceeded its license to print 45,000 copies of the photograph and used the photograph in a new textbook edition without obtaining Bean's permission. Bean claims that R.R. Donnelley infringed on his copyright as well by printing the textbooks in excess of the licensed amount. Defendants counter that this Court does not have subject matter jurisdiction over Bean's copyright claims because the copyright in the photograph was improperly registered.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Federal subject matter jurisdiction must be authorized by both the Constitution and by Congressional statute. *Id.* Federal courts must "scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (parentheses in original) (quoting *Healy v. Ratta*, 292 U.S. 263, 207 (1934)).

"The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. *See* Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take the form of a "facial attack" or of a "factual attack." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack contends that the allegations of the complaint are insufficient "on their face" to confer federal jurisdiction. *Id.* A factual attack, on the other hand, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* A moving party "convert[s] the motion to dismiss into a

1  factual motion by presenting affidavits or other evidence properly brought before the court."
2  *Savage v. Glendale Union High Sch.*, 343 F. 3d 1036, 1039 n.2 (9th Cir. 2003) (internal
3  citations omitted).  Having already filed an unsuccessful facial attack, Defendants now
4  submit a factual attack on subject matter jurisdiction.

5  When resolving a factual attack under Rule 12(b)(1), the court "may review evidence
6  beyond the complaint without converting the motion to dismiss into a motion for summary
7  judgment." *Safe Air*, 373 F.3d at 1039 (citing *Savage*, 343 F.3d at 1039 n.2).  A plaintiff's
8  allegations are not presumed to be true, and he must furnish evidence to satisfy his burden
9  of establishing jurisdiction. *Id.* (internal citations omitted).  However, the court must hold
10 an evidentiary hearing before resolving issues of credibility or genuinely disputed material
11 facts.  *See Federal Civil Procedure Before Trial* § 9:85.1, at 9-21.  The court has the
12 discretion to order an evidentiary hearing before trial or postpone the motion until trial.  *See*
13 *id.*

14 **III. VALIDITY OF COPYRIGHT REGISTRATION**

15 "28 U.S.C. § 1338 confers [federal court] subject matter jurisdiction over copyright
16 actions." *Richlin v. Metro-Goldwyn-Mayer Pictures*, ___ F.3d ____, 2008 WL 2492320, at
17 *3 (9th Cir. 2008).  However, the United States Code stipulates that: "no action for
18 infringement of the copyright in any United States work shall be instituted until
19 preregistration or registration of the copyright claim has been made in accordance with this
20 title." 17 U.S.C. § 411(a).  Thus, a federal court must dismiss a copyright infringement claim
21 for lack of subject matter jurisdiction when the copyright at issue was not validly registered.
22 *See, e.g.*, *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 73 (2d Cir. 2001), *modified and reh'g*
23 *denied*, 283 F.3d 65 (2d Cir. 2002).

24 Defendants allege that the copyright to Bean's photograph was improperly registered
25 for two reasons: (1) the copyright was not registered by an entity that owned "all rights under
26 the copyright;" and (2) the registration was not for a copyrightable work.  The Court will
27 examine these two points in turn.

28

**A. Registration by Entity with "All Rights Under the Copyright"**

**1. Summary of Facts**

Bean relies on copyright registration VA 863-783 ("the registration") to satisfy the copyright registration requirement for suit. Bean, however, is not the named claimant[1] on this form. The registration is for a collection of photographs, and Corbis Corporation ("Corbis") is the listed as the claimant. Bean and 127 other photographers had signed legal title to their images over to Corbis prior to registration. Corbis then registered all of these images as a collection of photographs in Corbis's own name, and subsequently transferred title in the individual images back to the original photographers.[2]

The contract signed by Bean granting legal title to Corbis reads as follows:

Copyright Registration Agreement

The undersigned hereby grants to Corbis Corporation ("Corbis") legal title in the undersigned's images selected and digitized by Corbis and included in the Corbis digital collection (the "Images") *solely for the purpose of copyright registration*.

Corbis agrees that it will promptly reassign legal title to the undersigned with respect to the undersigned's registered original film images upon Corbis' receipt of a Certificate of Registration from the U.S. Copyright Office covering such images.

In any event and for any reason, Corbis agrees that it will promptly reassign legal title to the undersigned with respect to the undersigned's original film images upon written request by the undersigned.

(Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Ex. A) (emphasis in original).

---

[1] Bean is, however, named as an "author" on the registration.

[2] This appears to have been done as a cost saving measure to reduce the time and expense of requiring each photographer to register his own works individually. Evidently, the photographers sign legal title in their works over to Corbis who then registers the body of photographs as a single collection. Theoretically, the copyright registration will then extend to each of the individual images. When Corbis later signs legal title back over to the artist, the artist will own a registered copyright in his particular photograph. Thus, there is only one copyright registration (and registration fee) for the single collection rather than a different registration for each individual photograph.

- 4 -

### 2. When Registration of a Collection Registers the Underlying Works

When a claimant registers a collective work, the copyright protection can also extend to each constituent part of that work. *See Szabo v. Errisson*, 68 F.3d 940, 943 (5th Cir. 1995); *see also Blue Fish Clothing, Inc. v. Kat Prints*, 1991 WL 71113 at *3 (E.D. Pa. 1991). However, this protection extends only when the registrant of the collective work would have been a valid "claimant" for purposes of registering the constituent part. *See Morris*, 283 F.3d at 506. Thus, if Corbis would not have been a proper claimant for purposes of registering the Bean photograph, then Corbis's registration of the collection would not extend to that photograph. When Corbis transferred the photograph back to Bean, the copyright would not have been registered, and Bean would not be able to enforce the present infringement claim in federal court.

### 3. Valid Claimants

37 C.F.R. § 202.3[3] establishes the criteria that must be met in order for a copyright to be properly registered. In discussing the requirements for valid claimants, 37 C.F.R. § 202.3(a)(3) provides that:

> (3) For the purposes of this section, a copyright claimant is either:
>
> (i) The author of a work;
>
> (ii) A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author. [n1]
>
> [n1] This category includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration.

Since it is uncontested that Corbis is not the "author" of the photograph, it follows from this regulation that if Corbis had less than "all the rights under the copyright initially belonging to the author" at the time of registration, it would not have been a valid claimant for registration purposes. Indeed, *Morris* confirms this: "the copyright 'claimant' for

---

[3] The Register of Copyrights may enact regulation establishing the proper procedures for copyright registration. 17 U.S.C. §§ 408(f), 702.

- 5 -

purposes of copyright registration is the author of the work for which registration is sought or a person or organization that has obtained ownership of *all rights* under the copyright initially belonging to the author." 283 F.3d at 506 (emphasis in original) (internal quotations and citations omitted).

Bean argues that Corbis did in fact have "all rights under the copyright." The parties signed a contract giving Corbis legal title to the images. Footnote 1 to 37 C.F.R. § 202.3(a)(3)(ii) provides that the class of people with "all rights under the copyright initially belonging to the author"[4] includes those entities with "the contractual right to claim legal title to the copyright in an application for copyright registration."

Defendants contend that Corbis could not possibly have had "all rights under the copyright." The contract granted Corbis legal title "*solely for the purposes of copyright registration.*"[5] (emphasis in original). Upon registration, Corbis was required to immediately reassign legal title to Bean. Corbis did not have the right to sell its title, nor did it have the

---

[4]The Court presumes that "all rights under the copyright originally belonging to the author" refers to the enumerated copyright rights (for example: reproduction, adaptation) under 17 U.S.C. § 106(1)-(6). While the author does have some unique rights to "attribution and integrity" under 17 U.S.C. § 106A(a), these rights are independent of copyright ownership and are inalienable. *See* 17 U.S.C. § 106A(b). Because 37 C.F.R. § 202.3(a)(3)(ii) clearly intends to give registration rights to entities other than the author, and because no entities other than the author can have the rights under 17 U.S.C. § 106A(a), "all rights under the copyright originally belonging to the author" cannot be taken absolutely literally lest it render 37 C.F.R. 202.3(a)(3)(ii) superfluous.

[5]The rights under the copyright are "a bundle of discrete, 'exclusive rights' . . . each of which 'may be transferred . . . and owned separately.' 17 U.S.C. § 201(d)(2)." *Morris*, 283 F.3d at 504 (quoting *New York Times Co., Inc. v. Tasini*, 121 S.Ct. 2381, 2388-89 (2001)) (internal quotations omitted). However, the right to register the copyright is not one of these severable rights. *Cf. Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 884 (9th Cir. 2005) (*en banc*) (holding on rehearing that right to sue is not a severable copyright, as it was not listed as a discrete right under 17 U.S.C. § 106). Therefore, the mere intent to transfer the right of registration to Corbis would not have been sufficient for Corbis to have been a valid claimant. Corbis would have to have owned all of the rights as required by 37 C.F.R. § 202.3(a)(3)(ii) at the time of registration in order for the registration to reach Bean's photograph.

- 6 -

right to make derivative works or to grant exclusive rights. Certainly Corbis could not have had "all rights under the copyright" if it was not actually allowed to *do* anything with its alleged "rights."

Thus, the question becomes: was the language of the contract transferring "legal title in the undersigned's images . . . *solely for the purpose of copyright registration*" (emphasis in original) adequate to transfer "all rights under the copyright" to Corbis? The Court holds that it was. 37 C.F.R. § 202.3(a)(3)(ii) n.1 explicitly states that the class of owners possessing "all rights under the copyright" includes entities with the "contractual right to claim legal title to the copyright." Defendants themselves reason in their Reply that "[t]he purpose of the footnote was to make clear that beneficial owners need not be considered; legal title to all rights under the copyright would suffice." (Def.'s Reply in Supp. of Mot. to Dismiss at 3-4) (citation omitted). Thus, the fact that Bean retained beneficial ownership of the copyright and that Corbis could not have transferred its legal ownership of those rights is inconsequential. Corbis owned bare legal title to all of the rights at the time of registration, and this was sufficient to make Corbis a valid claimant. While Corbis did not have the right to reproduce, adapt, publicize, perform, or display under 17 U.S.C. § 106, it did own *legal title* to all of these rights. 37 C.F.R. § 202.3(a)(3)(ii) n.1 clearly provides for this contingency when determining if an entity is a valid claimant for registration purposes.

Defendants further argue that the legal title owned by Corbis could not have been to "all rights" because the title was conveyed for the limited purpose of copyright registration. However, legal title can be transferred for a limited period of time and for a limited purpose. *See generally A. Brod, Inc. v. SK&I Co., L.L.C.*, 998 F. Supp 314 (S.D.N.Y. 1998) (plaintiff transferred bare legal title to rights under copyright for purposes of lawsuit; legal title would revert back to him at resolution of suit); *see also* Restatement (Third) of Trusts § 5 cmt. h (2003) ("[A] transfer may create a trust that is to arise or terminate upon some condition.").

1 Indeed, when a trust[6] is created, often an entity will hold bare legal title to property subject 2 to a multitude of restrictions while the beneficiary retains the equitable interest. *See* 3 *generally* Restatement (Third) of Trusts § 2 (2003). This does not mean that less than "all 4 rights" are transferred. It simply means that one entity holds legal title to "all rights" while 5 another retains the equitable benefits of "all rights."

### 4. Property Transferred by the Contract

Defendants also postulate that Bean did not transfer legal title to the *copyright*, but merely legal title to the *image*. Defendants point to the section of the Bean-to-Corbis contract that transfers "legal title in the undersigned's *images*"(emphasis added) as opposed to, for example, "legal title to the *copyright*." While "a copyright is not transferred automatically with the transfer of the copyrighted good . . . [,] it does not follow . . . that the agreement must use the word 'copyright.'" *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 931 (7th Cir. 2003). Whether the copyright was in fact transferred along with the copyrighted good may be inferred from the language of the transfer agreement. *Id.* at 932.

Here, it was clearly the intent of the parties to transfer title to the copyright along with the images. If there was ever any doubt as to this, it would have been resolved by the phrase indicating that the images were to be conveyed "*for the purposes of copyright registration*." (emphasis in original). When examined in the context of the agreement, it is obvious that the parties intended to transfer legal title to the copyrights in the image along with legal title to the image itself.

---

[6]The Court does not hold that the Bean-to-Corbis contract necessarily created a trust. The language of 37 C.F.R. § 202.3(a)(3)(ii) n.1 does not require the presence of a trust relationship in order to create a valid claimant; only transfer of the "contractual right to claim legal title." However, here the analogy to a trust is particularly fitting. Bean transferred legal title in his copyright to Corbis, and Corbis was required to manage this legal title for Bean's benefit (as the language "*solely for the purposes of copyright registration*" conveys). Because the transfer of legal title for limited purposes and for the benefit of another is perfectly acceptable in a trust situation, the Court does not find any reason why title cannot be conditioned in this way here.

- 8 -

**B. Copyrightable Work**

Alternatively, Defendants claim that the copyright registration did not reach Bean's photograph because the collection of photographs itself was not a copyrightable work. While, as noted above, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts," *Indus. Tectonics,* 912 F.2d at 1092 (citation omitted), when the validity of the underlying copyright is disputed, "the registration [certificate] is considered prima facie evidence of the validity of the copyright."[7] *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). This presumption of validity "can be challenged by presenting evidence attacking the elements of a valid copyright." *Id.*; *see also* 17 U.S.C. § 410(c).

Here, Bean has presented a valid registration certificate. Defendants contend that the Corbis collection could not have been registered as a "single work" because it was never published as a single publication. *See* 37 C.F.R. § 202.3(b)(4)(A)-(B). They also maintain that it could not have alternatively been registered as a "database" because the photographs in the collection were not "similar in their general content." 37 C.F.R. § 202.3(b)(4)(C). However, Defendants cite to no *evidence* to support these accusations, and mere "accusations are not evidence." *Man-Seok Choe v. Torres*, 525 F.3d 733, 738 (9th Cir. 2008) (citing *in re Sauvage*, 819 F. Supp. 896, 902-03 (S.D. Cal. 1993)).

Because Defendants have not cited to any evidence to overcome the presumption of a valid copyright established by the registration certificate, the Court will presume for the

---

[7] While "'the assignee of a previously registered statutory copyright has the burden of proving his chain of title since nothing in the registration certificate evidences his right to claim through the original copyright claimant,'" *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 1989 WL 117704 at *5 (S.D.N.Y. 1989) (quoting 3 *Nimmer on Copyright*, § 2.11(C) at 12-81-12-82 (1989)), the chain of title (from Bean to Corbis, and then from Corbis to Bean) is clearly evidenced by the contracts provided and appears to be undisputed. Furthermore, Bean is explicitly listed as an "author" on the copyright registration form, and there is therefore something "in the registration certificate evidenc[ing] his right to claim through the original copyright claimant."

1  time being that the Corbis collection was a copyrightable work at the time of registration.[8]

## IV. CONCLUSION

Because Corbis held "the contractual right to claim legal title to the copyright," it was a valid claimant to the photograph for registration purposes under 37 C.F.R. § 202.3(a)(3)(ii) n.1 at the time of registration. Thus, Corbis's registration of the collection of photographs containing Bean's photograph registered Bean's photograph individually. When Corbis transferred legal title in the photograph back to Bean, it transferred title in a fully registered copyright.

The Court therefore finds that Bean has met his burden of establishing subject matter jurisdiction in fact.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction in Fact (Doc. # 37) is **DENIED**.

DATED this 28th day of July, 2008.

_____
James A. Teilborg
United States District Judge

---

[8] The Court does not decide definitively at this point whether the collection was copyrightable; merely that Defendants have not provided sufficient evidence to overcome the prima facie validity of the registration certificate. As noted above, the court has the discretion to order an evidentiary hearing before trial or postpone the motion until trial. *Federal Civil Procedure Before Trial* § 9:85.1, at 9-21. Thus, the Court will postpone the matter until there is sufficient evidence before it to properly rule on the issue.

- 10 -