Maurice Harmon (MH-9419)
Harmon & Seidman LLC
The Pennsville School
533 Walnut Drive
Northampton, PA 18067
610.262.9288
maurice@harmonseidman.com

Christopher Seidman (CS-7816)
Harmon & Seidman LLC
PO Box 3207
Grand Junction, CO 81502
Tel: 970.245.9075
Fax: 970.245.8086
chris@harmonseidman.com
*Attorneys for Plaintiff Tom Bean*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| TOM BEAN, | |
| Plaintiff, | No. CV-07-8063-PHX-JAT |
| v. | |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, and R.R. DONNELLEY & SONS COMPANY, | |
| Defendants. | |

**LODGED: Proposed**

**EXHIBIT 8**
**TO**

**PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF REPLY BRIEF ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND MEMORANDUM OF LAW (DOC. NOS. 93-98)**
**Attached**

# EXHIBIT 8

From: Carmine_Fantasia@hmco.com
Subject: **Mosque Rays photo**
Date: September 15, 2005 3:53:54 PM EDT
To: maurice@mauriceharmon.com

Dear Mr. Harmon,

Upon further investigation, I learned that our Grade 9 Language of Literature textbook has had three minor copyright updates since 2000, with a total print quantity of 523,900. We anticipate reprinting this book until 2008, when it will be replaced by a new Literature series. As a result, we anticipate that as the current series ages, there will be less demand for this book. However, in order to cover future printings, we would like to secure the rights to print 40,000 copies in addition to the past printed quantities.

We recognize that we have exceeded the original licensing agreement and would very much like to rectify this situation. We value the relationships with the photographers and artists who contribute to our products, and we certainly want to maintain a good working relationship with Mr. Maisel.

We would like to renew our license with Mr. Maisel that fully accommodates both past and future printings. Please contact me so that we can discuss the terms of the new licensing agreement.

Sincerely yours,

Carmine Fantasia
Senior Art Resources Manager

McDougal Littell
909 Davis Street
Evanston, IL 60201 USA
tel.(847) 424-3169  fax (847)424-3163
email: carmine_fantasia@hmco.com

Fantasia DEP. EX. NO. G
FOR ID., AS OF 11/7/06 St

From: Lois_Novotny@hmco.com
Subject: **Jay Maisel**
Date: October 19, 2005 11:23:21 AM EDT
To: maurice@mauriceharmon.com

October 19, 2005

Maurice Harmon, Esq.
The Pennsville School
533 Walnut Drive
Northampton, PA 18067

Dear Mr. Harmon:

As I told you when we spoke last night, it is our desire to resolve promptly the permissions issue concerning the use by McDougal Littell of Mr. Maisel's photograph entitled "Mosque Rays" in the 9th grade volume of McDougal Littell's literature program entitled The Language of Literature.

To that end, we have thoroughly investigated all current and anticipated future uses of the photograph, so that we will be able to make appropriate payment for these uses at this time. The Language of Literature will remain McDougal Littell's frontlist literature series until 2008, when it will be replaced by a new program. Before then, there are still a number of significant adoptions in which it will be considered, and, although sales will decrease after publication of the replacement program, there will nevertheless be residual sales extending approximately 10 years into the future from schools that purchased the program. The figures that Ms. Fantasia provided to you on September 15 in an effort to respond to you promptly were gathered so quickly that they unfortunately did not include all printings of every copyright update, all teachers' editions, and the full internal estimate for both new and residual sales through this extended period. In calculating the number of copies of this text that will be printed through its expected lifetime, we have used the high end of our internal projections, to help provide an adequate cushion in the estimate. We believe that a total lifetime use of 1,400,000 copies will permit us to more than meet expected demand for the text without exceeding the permissioned number of copies of the photograph.

To arrive at an appropriate proposed base license fee for the total lifetime use of the photograph, we have used outside sources as a point of reference rather than fees we have usually paid to other photographers, since those fees have been substantially lower than the fee initially charged by Mr. Maisel. Likewise, we did not consider fees charged by stock photo companies such as Corbis and Getty for this purpose because their rates were also significantly lower than Mr. Maisel's initial fee. We have used as a reference the publication Negotiating Stock Photo Prices, by Jim Pickerell and Cheryl Pickerell DiFrank (2001 edition), authors who are affiliated with the American Society of Media Photographers, which appeared to us to be an objective source of information, particularly as it is written from the photographer's viewpoint. We have used the pricing schedules described in this publication in formulating our proposed base license fee (all prices quoted are for a full page photograph).

We looked initially at the table of prices for textbooks and educational uses on page 274, although both the highest print run and the suggested rates required adjustment, since the highest print run was 200,000 copies, well below the amount we are now requesting, and the quoted rates were lower than those charged by Mr. Maisel. We extrapolated the decrease in rates proportionately as the print run increases, with a calculation favorable to Mr. Maisel. The result was a fee of increase of 342% from the cost of a run of 40,000 to a run of 1,500,000 (to use unit increments consistent with those in the table). When this percentage increase is applied to Mr. Maisel's original fee of $600, it yields a fee of $2,052.

The book's suggestions on page 254 regarding fees for advertising uses of photographs were helpful because the print runs went up to over 30 million, and the rates, while much higher than those shown for educational uses and higher than Mr. Maisel's rates, were closer to Mr. Maisel's rates than those quoted for educational uses. For example, for 50,000 copies the suggested fee was $995, as compared to the payment of $600 to Mr. Maisel for 40,000 copies. The suggested fee for between 1,000,000 and 3,000,000 copies (there was no print run in between) was $2,465.

Recognizing that these are suggested fees, and that the circumstances differ, we would propose a base license fee of $2,275, with no deduction or set-off for the license fee we originally paid. As this is a retroactive license fee, and noting the practice of applying a multiplier in establishing a retroactive fee for use of a photograph beyond the license granted, we would propose the middle of the range of multipliers mentioned in your letter, and multiply the base fee by five to arrive at a total fee of $11,375. Since the terms and conditions in Mr. Maisel's invoice provide that New York laws govern, we have calculated interest at the rate of 9% provided by CPLR §5004 for each year since 1999 to bring the total fee plus interest to $18,541. We are also prepared to pay reasonable attorneys fees.

In our conversation, you had suggested that, in addition to any damages payment, it might be appropriate to investigate the question of the percentage of profits attributable to the use of Mr. Maisel's photo. While there are many instances where a particular copyrighted work may contribute to the profits derived from the product in which it is included, this is not the case here. If the book in question were, for example, one on the topic of art or photography, it is reasonable to suggest that a purchaser might make a decision to buy the book based on the items glimpsed while leafing through it, or because it contains works by particular artists. In this instance, however, Mr. Maisel's photograph appears on one page of the 9th grade volume of a grade 6-12 literature program consisting of pupil and teacher editions and supplementary materials for each grade level, with thousands of pages in total. The 9th grade volume is generally not sold separately, but as part of a multi-level purchase. A school's decision to purchase this program would be based on factors such as the conformity of the program with state or local curriculum requirements, alignment with state testing standards, and the program's approach to literature and pedagogy. The presence or absence of any illustrative material, no matter how famous the image or eminent the artist, would thus have no effect whatsoever on sales of the program. While I understand your desire to explore all potential remedies on behalf of your client, I hope you will agree that in this case, a percentage of profits is neither reasonable or appropriate.

We are in agreement that a prompt resolution of this matter is in the best interest of both parties. I would be happy to discuss our proposal with you so that we can achieve that goal both quickly and amicably.

Very truly yours,

Lois M. Novotny
Associate General Counsel
Houghton Mifflin Company
222 Berkeley Street
Boston, MA 02116
617-351-5109 (telephone)
617-351-1125 (fax)

Exhibit B
Pff.'s Memo. in
Support of Stay of Arbitration
06cv0765

Case 3:07-cv-00806-JAT   Document 236-8   Filed 03/13/2009   Page 5 of 6
Case 3:07-cv-00806-JAT   Document 236-8   Filed 03/13/2009   Page 5 of 6

JAY MAISEL PHOTOGRAPHY    190 THE BOWERY    NY, NY, 10012    (212)431-5013    FAX: (212) 925-6092

I N V O I C E



PAID JAN 08 1999

600.-

McDougal Littell
1560 Sherman Avenue
Evanston, IL 60201
Attn: Frances De Vuono

Inv. #: 5728
Date : November 12, 1998
P.O. #:
Job #:
A.D. : Frances De Vuono
Buyer : (847) 424-3305
Client: The Language of Literature

DESCRIPTION, RIGHTS GRANTED, PERIOD OF USE;

Non-exclusive reproduction rights only to the Copyright 1971 Jay Maisel photograph "Mosque rays" (SS101A) for use by McDougal Littell in the high school textbook "The Language of Literature" by Arthur N. Applebee, Judith Langer, et al. The image will appear as a full page in color. The print run is limited to 40,000 copies. It will be piblished in the year 2000.

Any additional usage must be negotiatied separately.
PLEASE SEE THE BACK OF THIS PAGE FOR FURTHER CONDITIONS.

| FEES: | Stock Usage Fee | 600.00 | $ | 600.00 |

SUB-TOTAL        $   600.00
SALES TAX (Exempt)$
TERMS: Due and payable upon    ADVANCE/PAYMENTS  $
receipt of invoice.
BALANCE DUE      $   600.00

THIS INVOICE SUBJECT TO ALL TERMS AND CONDITIONS ON THE REVERSE SIDE.
Jay Maisel SS # 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

Noelle Tan for Jay Maisel _____    Date: 11·12·98

## STOCK PHOTOGRAPHY LICENSE TERMS AND CONDITIONS

All photographs are Copyrighted 1996 Jay Maisel. All photographs published must carry this notice properly affixed to the image. All rights are reserved by Jay Maisel. This is a limited assignment of Copyright by Jay Maisel, this invoice permits one-time publication only for the use, duration and insertions as specified on the front. Any use other than that specified on the front of this invoice must be negotiated and a purchase order issued. Rights granted by this invoice become effective only upon payment of this invoice. In the event that full and complete payment is not received within 60 days of invoice date all usage and fees will be subject to renegotiation by the parties.

**THIS IS NOT A "WORK MADE FOR HIRE".**
**PUBLICATION OR USAGE OF ANY KIND OF THIS WORK PRIOR TO PAYMENT CONSTITUTES A VIOLATION OF FEDERAL COPYRIGHT LAW.**

1) "Image(s) and materials" means all viewable renditions furnished by Jay Maisel, whether captured or stored in photographic, printed, magnetic, optical, digital, or any other medium whatsoever.
2) All rights not expressly granted remain the exclusive property of Jay Maisel without limitation; user (or recipient) acquires only the rights specified on the front and agrees to return all photographs used within 30 days after publication or 4 months after the invoice date, or pay thereafter $10.00 per week per image.
3) Use rights granted are specifically on the condition that user (or recipient) assumes insurers liability to: (a) Indemnify Jay Maisel for loss, damage or misuse of the photographic image(s) and materials and (b) Return all photography pre-paid and fully insured, safe, and undamaged, by bonded messenger, air freight, or registered mail. User (or recipient) assumes full liability for its employees, agents, assigns, messengers and freelance researchers for any loss, damage or misuse of the photographic image(s) and materials.
4) All materials, must be returned in the same condition as delivered. Reimbursement for loss or damage shall be determined by a image's reasonable value which shall be a minimum of $2,500.00 each per original and $250.00 each per duplicate. It is agreed that Jay Maisel Photography will retain the exclusive right to determine whether the transparencies or materials are damaged and the value of the damaged photograph.
5) CHARGES: A minimum kill charge of $250.00 per photo put into production will be assessed in the case of cancellation of a licensed project.
6) User will provide copyright protection as required by U.S. Public Law 94-553, Title 17, USC 401 on any use, commercial or editorial and assign same to Jay Maisel. Adjacent copyright line for Jay Maisel must accompany all EDITORIAL use, or invoiced fee triples.
7) User will indemnify Jay Maisel against all claims and expenses arising out of the use of any photograph(s) unless a model or other release was specified to exist in writing by Jay Maisel. Unless so specified no release exists. Jay Maisel's liability for all claims shall not exceed, in any event, the amount paid under this invoice.
8) Time is of the essence for receipt of payment and return of photographs. No rights are granted until payment is made. Payment is required within 30 days of invoice. 1.5% per month service charge on unpaid balance is applied thereafter. Adjustment of amount or terms must be requested within 10 days of invoice receipt.
9) Permission to scan or digitize is granted for pre-press purposes only, provided the digitized versions are stored only as long as work on the project is in progress. When the project is complete, all digitized versions of the image must either be destroyed or returned to Jay Maisel. Any Photo CD scan made of the image(s) must be returned to Jay Maisel and is the property of Jay Maisel.
10) **USER SHALL PROVIDE THREE FREE COPIES OF USES** appearing in print and a semi-annual statement of sales and subsidiary uses for photographs appearing in books.
11) User may not assign or transfer this agreement. Holding or use of the photographs constitutes acceptance of the above terms, hereby incorporating Article 2 of the Uniform Commercial Code. No waiver is binding unless set forth in writing. Any objection to the stated provisions must be made in writing two (2) days from receipt of this invoice and prior to any use of the material. No alterations may be made to the stated provisions without the express permission of Jay Maisel.
12) Any dispute regarding this invoice, including its validity, interpretation, performance, or breach shall be arbitrated in New York, NY under the rules of the American Arbitration Association and the laws of New York. Judgment on the Arbitration Award may be entered in the highest federal or state court having jurisdiction. Any dispute involving $1,000.00 or less may be submitted, without arbitration, to any court having jurisdiction thereof. User shall pay all arbitration and court costs, reasonable attorney fees plus legal interest on any award of judgment.
13) User agrees that the above terms are made pursuant to Article 2 of the Uniform Commercial Code and agrees to be bound by the same, including specifically clause (11) above to arbitrate disputes.
14) Jay Maisel assumes no liability for materials not supplied by him.

**INVOICES NOT PAID WITHIN 30 DAYS WILL BE CHARGED 1.5% INTEREST PER MONTH, OR A $50 RE-BILLING FEE, WHICHEVER IS GREATER.**